## 46957. VAUGHN v. THE STATE.

CLARK, Judge. On Saturday afternoon, October 9, 1971, Walton County Sheriff Franklin Thornton received information that there was a described stolen car at Alvin Vaughn's house. The informer further told the sheriff "that Alvin Vaughn and Bobby Lee Fears had left Monroe for Washington, D. C. to purchase drugs," which were described as heroin and LSD with Vaughn having had about $1,000 in his possession. Sheriff Thornton contacted Assistant Police Chief Underwood of Monroe and they verified the car which they observed to be in an area adjacent to the Vaughn home had in fact been stolen in Atlanta where the police had an arrest warrant pending for Fears. The informer reported Vaughn and Fears would be returning sometime Sunday afternoon in a 1969 yellow and black Mercury belonging to Vaughn. The sheriff and police went to the Vaughn home on Sunday, October 10, and removed the stolen car from the premises. They talked to Vaughn's wife and learned from her she anticipated her husband would return during the afternoon. Policemen were called in to keep the Vaughn residence under surveillance.

The Vaughn automobile arrived at the Vaughn home Sunday afternoon with four passengers, they being Alvin Vaughn, Bobby Lee Fears, Tyrone Williams and Vaughn's ten-year-old son. Fears was driving, Williams was in the front seat and Vaughn in the rear. Upon searching the men the officers found Williams possessed two hypodermic needles and a marijuana cigarette. They also observed some green leafy material on the floor of the car which the officers regarded as being marijuana. All three were placed under arrest and incarcerated in the Monroe City Jail at approximately 4:30 p.m. The Vaughn vehicle was driven to the jail by the officers, who impounded it after making certain it was locked.

Contact was next made by telephone with Justice of the Peace Marcus Malcolm who was visiting at an Athens

hospital. The officer informed him they desired a search warrant for Vaughn's car and an arrest warrant for Tyrone Williams. The justice of the peace returned to Monroe where Sheriff Thornton and two Monroe police officers executed the necessary affidavit to obtain a search warrant for the 1969 Mercury car registered in Vaughn's name. This was done at 5:15 p.m. Sunday.

The search disclosed a small clear bag hidden under the rear of the driver's seat. A return was prepared on the original warrant as to finding "one small clear bag containing a white powder believed to be Heorin [sic]." This return was not signed by any of the officers or by the justice of the peace but was delivered to the justice of the peace. The report from the State Crime Laboratory showed this to be heroin.

Immediately after discovery of the heroin shortly before dark on Sunday afternoon request was made for an arrest warrant but the justice of the peace suggested this be delayed until Monday morning. After the issuance of the arrest warrants on October 11, 1971, Vaughn and the other defendants were brought from jail before the committing magistrate Monday afternoon. The State contends Vaughn made an intelligent waiver of his right to a committal hearing which is denied by defendant who was released after posting bail.

On November 15 the grand jury returned an indictment in two counts charging the three defendants with possession of marijuana in violation of the Georgia Drug Abuse Control Act and possession of heroin contrary to the Georgia Uniform Narcotic Act.

One week later, November 22, the case was called for trial with Vaughn going on trial separately from the other two defendants. The first day was occupied by testimony and legal arguments based on motions made by defense counsel, all of which were overruled with the rulings being presented as enumerations of error and dealt with separately hereafter in this opinion.

The trial occupied the next two days with testimony from

the law enforcement officers as to the foregoing facts. The co-defendant Tyrone Williams was called as a witness for the State. He described the trip which he made with Vaughn, Fears and Vaughn's ten-year-old son to Virginia including details of the purchase of the heroin and the return trip to Monroe. He acknowledged that he had been a heroin addict.

Defendant's unsworn statement denied having anything to do with the heroin including an absence of knowledge of its presence in his automobile.

The court directed an acquittal as to the marijuana possession count and the jury found defendant guilty of possession of heroin. Thereafter in the statutory bifurcated proceedings the jury's verdict provided a three-year imprisonment and a fine of $2,000 which was made the judgment of the court.

There are seventeen enumerations of error which will not be considered in numerical order but dealt with in chronological sequence as they occurred during the trial. *Held:*

1. The initial defense motion was to suppress the evidence consisting of the bag containing the heroin (Enumeration No. 14). The motion stated eight grounds which may be summarized as the arrest being without warrant and illegal, a failure to show probable cause for issuance of the search warrant, and that the impounding of the vehicle and search thereof was a violation of defendant's constitutional rights. It is also argued that the affidavit upon which the search warrant was issued does not contain sufficient facts to show probable cause.

At the pre-trial hearing on this motion testimony given by the sheriff and four police officers developed receipt of information from a reliable informer that had resulted in recovery of a stolen automobile on Vaughn's premises, the arrival of the described Vaughn car with Fears therein as predicted by the informer, a voluntary search of Williams disclosing possession of narcotic paraphernalia plus one marijuana cigarette and that there were

traces of a "green leafy substance on the floor" of Vaughn's car thought to be marijuana. Thus it appears that not only was there "likely to be a failure of justice for want of an officer to issue a warrant" within the requirement of *Code* § 27-207 but the officers had sufficient facts and information to warrant a belief that Vaughn was committing an offense. Beck v. Ohio, 379 U. S. 89 (85 SC 223, 13 LE2d 142); *Howell v. State,* 162 Ga. 14 (134 SE 59); *Gordy v. State,* 93 Ga. App. 743 (92 SE2d 737).

Our examination of the affidavit signed by the sheriff and also by two police officers which details the facts on which the warrant was requested shows probable cause that a crime was being committed or had been committed within the provisions of *Code Ann.* § 27-303. "Probable cause exists where the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a belief by a man of reasonable caution that a crime is being committed." Brinegar v. United States, 338 U. S. 160 (4) (69 SC 1302, 93 LE 1879). See also *Campbell v. State,* 226 Ga. 883 (178 SE2d 257) and *Johnston v. State,* 227 Ga. 387 (181 SE2d 42).

With reference to appellant's contention that the search and seizure was unlawful because of having been made prior to arrest, 89 ALR2d 715 contains an annotation dealing with the subject of "lawfulness of non-consensual search and seizure without warrant, prior to arrest." Cases covering search of an automobile are cited from various jurisdictions beginning at page 721. The mobility of vehicles is recognized by the courts in comparison with the strictness applied to search of a residence, "a man's castle." The leading case is Carroll v. United States, 267 U. S. 69, 158 (45 SC 280, 69 LE 543, 39 ALR 790), where we find the following: "The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the auto-

mobile offends against the law." It is obvious in the case involved that if the automobile had not been impounded it could have been removed and the contraband heroin disposed of.

Furthermore, we are of the opinion the detainer under the circumstances constituted a legal arrest and, therefore, does not come within the holdings of *Dennis v. State,* 108 Ga. App. 646 (134 SE2d 519); *Raif v. State,* 109 Ga. App. 354 (136 SE2d 169); *Johnson v. State,* 111 Ga. App. 298 (141 SE2d 574); and *Rowland v. State,* 117 Ga. App. 577 (161 SE2d 422).

2. Additionally, appellant contends his motion to suppress evidence was erroneously denied because a fatal defect existed in the search warrant procedure because the return was not in compliance with the requirement of *Code Ann.* § 27-310 (Ga. L. 1966, pp. 567, 570) in that the officer executing the warrant failed to sign the return under oath.

The officer did in fact make his holographic entry in the printed form, his handwriting stating "One small clear bag containing . . . Herion [sic]." He delivered the warrant and contraband to the magistrate.

Such oversight was considered in *Waters v. State,* 122 Ga. App. 808 (178 SE2d 770). This court ruled that absent a showing of prejudicial error to defendant the failure to swear to the return was not a fatal defect on the authority of *Code Ann.* § 27-312 (Ga. L. 1966, pp. 567, 571), "No warrant shall be quashed nor evidence suppressed because of technical irregularity not affecting the substantial rights of the accused." Such holding is in accordance with the federal rule as shown by citations contained in the *Waters* opinion. See also two decisions by the United States Court of Appeals for the 6th Circuit which ruled that the return of a search warrant is a ministerial act, and any failure therein does not void the warrant. Rose v. United States, 274 F 245 (1921), and Evans v. United States, 242 F2d 534 (1957), cert. den., 353 U. S. 976.

3. During the hearing on the motion to suppress there was a ruling by the trial judge limiting the defense attorneys to argument by only one counsel which appellant asserts to have been error "in denying defendant his right to counsel at a crucial stage of this proceeding." (Enumeration No. 15.)

Page 50 of Section A of the transcript contains the following colloquy: "District Attorney: I think the State is entitled not to play ping pong with these gentlemen. I think one can argue, not that one argue until he is exhausted and then the other one jump up and argue until he is exhausted and then the other one gets up. If they have an argument they want to present through one legal counsel I think they should do that. The Court: The State's position is correct. Mr. Gilbert: We are not double teaming a witness. That is bad practice I agree. The Court: I rule that one counsel is going to argue this issue."

There is no infringement upon the rights of an accused when the judge in the exercise of his discretion limits presentation to one advocate. "The trial judge is more than a mere chairman preserving order at a meeting or a mere moderator of a debate, but he is a minister of justice with a duty to govern the progress of a trial." *Heard v. Heard,* 99 Ga. App. 864, 869 (110 SE2d 76); *Atlantic C. L. R. Co. v. McDonald,* 103 Ga. App. 328, 339 (119 SE2d 356).

4. Appellant contends the court erred in failing to grant continuance upon motion by defense counsel. (Enumeration No. 17.)

"The question of granting or denying a continuance is within the sound discretion of the trial judge, which discretion will not be interfered with unless manifestly abused. *Roth v. State,* 70 Ga. App. 93 (27 SE2d 473), *Hyde v. State,* 196 Ga. 475, 479 (26 SE2d 744)." *Waters v. State,* 122 Ga. App. 808, supra.

Although this motion was based upon a contention the defense needed more time for proper preparation the court did not abuse its discretion in refusing the requested

continuance. The arrest was on October 10 which was more than one month prior to trial, and even though only one week had elapsed between the date of the indictment and the date of trial the intervening time was sufficient for preparation.

5. Appellant made a motion to quash the indictment upon the ground that he had been denied a committal hearing (Enumeration No. 1).

In support of his contention he cites Coleman v. Alabama, 399 U. S. 1 (90 SC 1999, 26 LE2d 387), and *Mollins v. State,* 122 Ga. App. 865 (179 SE2d 111). Both of these cases recognized the committal hearing to be a valuable right for an accused as in fact was ruled by the Georgia Supreme Court in *Manor v. State,* 221 Ga. 866 (148 SE2d 305) three years prior to the Coleman decision. It should be pointed out, however, that the Coleman and *Mollins* decisions do not in fact require a committal hearing but hold that if a preliminary trial is held without providing legal representation for the accused that the case will be remanded so that a hearing may be held and a finding made as to whether beyond a reasonable doubt lack of counsel resulted in harm or prejudice to the defendant at the jury trial. In two recent habeas corpus cases decided since the Coleman decision the Georgia Supreme Court has decided that the holding of a commitment hearing is not a requisite to a trial for the commission of a felony. *Brown v. Holland,* 228 Ga. 628 (187 SE2d 246) and *Burston v. Caldwell,* 228 Ga. 795 (187 SE2d 900). As is stated in the Georgia Constitution, "The decisions of the Supreme Court shall bind the Court of Appeals as precedents." Art. VI, Sec. II, Paragraph VIII (*Code Ann.* § 2-3708).

In any event the Coleman and *Mollins* cases do not apply to the situation here because the defendant in the case at bar made an intelligent waiver of his right to such committal hearing. The transcript (Section B, pages 1-32) contains the evidence from the committing magistrate, the County Sheriff and the Assistant Chief of Police of

Monroe which show this to be the situation. Although defendant under oath denied his intention to waive such rights and stated he assumed he was limiting himself to posting bail for his release, we hold the trial judge was justified when he ruled: "I have heard him testify from the stand, and I think he was advised adequately by Sheriff Thornton and by [J. P.] Marcus Malcolm as to his rights, and he elected to waive his rights to a committal hearing. I think the fact that he did it without benefit of counsel when I feel that he had been offered counsel, and I think if he elected to do it without benefit of counsel, and he elected it freely and voluntarily, he is bound by that election." The motion to quash the indictment on this ground was properly overruled.

6. Enumeration of error No. 13 reads as follows: "The court erred in refusing to disqualify the entire panel of jurors, all of whom were sitting in the courtroom, when the district attorney stated: 'Apparently the defense counsel entered a plea of guilty.' (T/2, 3, 167, 168, 169.)"

An examination of Section E of the lengthy transcript shows that during arraignment when the defendant stood mute and the court directed the clerk to enter a plea of not guilty on behalf of the defendant upon the indictment that the district attorney replied: "Judge, I am going to have to do this on a separate piece of paper. Apparently the defense counsel entered a plea of guilty . . ." Defense counsel objected. Thereafter the following corrective action was taken consisting of a statement by the District Attorney and admonition by the judge to the panel:

"Your Honor, I would like to make this statement in front of the jury. By inadvertence I made the statement that the defendant had entered a plea and had withdrawn it, a plea of guilty. I did not mean to intimate that. The defendant has never at any time entered a plea of guilty to the charge of possessing marijuana and possession of heroin, and to my knowledge he has never admitted his guilt to either of those offenses. For that reason I would

request that the court instruct the jury to disregard my statement and to also admonish me in the presence of the jury for inadvertently having made that statement."

Thereupon the court said: "I know you well enough to know it was not intentional, and I instruct the jury to wipe that statement completely out of your minds. This defendant has never entered any plea of guilty nor has he ever so far as this court knows, and this court spent a day and a half listening to evidence about this case, admitted his being guilty in any way of either of the offenses charged. He comes into court with the presumption of innocence in his favor. That presumption remains with him throughout the trial unless and until it is overcome by evidence proving his guilt beyond a reasonable doubt. You will consider him innocent. You will disregard Mr. Ridgway's misstatement, and we will proceed with the trial."

The defendant was not thus deprived of his right to a fair trial. *Manchester v. State,* 171 Ga. 121 (155 SE 11); *Gore v. State,* 124 Ga. App. 398 (184 SE2d 24); *Andrews v. State,* 222 Ga. 689 (152 SE2d 388); *Salmon v. Salmon,* 223 Ga. 129 (153 SE2d 719); *Wooten v. State,* 224 Ga. 106 (160 SE2d 403).

7. Enumeration of error No. 2 avers that the court erred in failing to require the district attorney to comply with defendant's demand that he be furnished with a proper list of witnesses prior to arraignment.

This contention is based upon the prosecuting attorney having tendered counsel a copy of the indictment and two separate lists of witnesses with one of these lists being a roster of the Monroe Police Department. When the defense objected to the latter list on the ground that defendant was entitled to the names of the witnesses who could reasonably be expected to testify for the State, the court ruled that the prosecution had complied with the requirements of the law.

Although appellant contends that the statutory requirement is nullified in that "the personnel roster of the City Po-

lice Department (including, for all the defense knows, clerks and janitors)," there is nothing in the record to show the number of Police Department employees contained in the list. We observe that four officers of the Monroe Police Department testified. None of these could have been considered as a surprise witness as they participated in the arrest and search. The trial judge considered that the rights of the defendant were not prejudiced. We agree.

8. Another enumeration of error (No. 3) is based upon an occurrence during the motion for sequestration of witnesses when the district attorney stated, "Your Honor, I would like to ask of defense counsel if he does have any witnesses. I would like to have the names now so I might also see that they do not enter the courtroom during the presentation of evidence."

Defendant argues that "the district attorney had made it appear to the jury that defendant had witnesses available for his defense, that it was incumbent upon defendant to furnish a list of his witnesses to the State and defendant had failed in his obligation" and that "instead of taking corrective action, the trial court considered the district attorney's prejudicial remark by stating that he would hold counsel for defendant responsible for insuring that the defendant's witnesses also remained outside the courtroom."

The manner in which sequestration is enforced, as applied to particular situations, is a matter for the exercise of sound discretion by the court. *McKeever v. State,* 118 Ga. App. 386, 389 (163 SE2d 919); *Farris v. State,* 96 Ga. App. 320 (99 SE2d 911). No error here.

9. Enumerations of errors numbers 4, 5, and 6 deal with statements made by the district attorney in reference to the stolen automobile.

The district attorney's opening statement made reference to the events which began with the report from the informer concerning the stolen automobile and the informer's report concerning the proposed trip of defendant and

his co-defendant Fears for purchase of "heroin and LSD." When defense counsel objected the court overruled the objection and made the following statement to the jury:

"Ladies and gentlemen, I want to make it abundantly clear the district attorney had made reference to an alleged stolen automobile. That automobile may or may not have been stolen. It was part of the basis upon which the officers took certain action, and evidence will be submitted to you showing why the officers took certain action; however, I caution you nobody is on trial for automobile larceny, and this evidence to the extent it is offered can be considered by you only for the purpose of showing why the officers and the Magistrate, Marcus Malcolm, did what they did." This corrective instruction was sufficient in the absence of a motion for mistrial. A similar situation was passed on in *Ledford v. State,* 215 Ga. 799 (113 SE2d 628), and the court ruled the curative instructions were sufficient. See also *Jordan v. State,* 78 Ga. App. 879 (52 SE2d 505) and *Daniels v. State,* 58 Ga. App. 599 (199 SE 572).

10. Enumeration of error No. 8 deals with the court's failure to act in connection with the allegedly erroneous and prejudicial remarks to the jury concerning the quantum of evidence necessary to convict the defendant of possession. This contention is without merit as it appears that the remark was a permissible deduction from the evidence. See *Miller v. Coleman,* 213 Ga. 125, 130 (97 SE2d 313):

"[I]n *Taylor v. State,* 121 Ga. 348, 354 (49 SE 303), it is pointed out that 'What the law forbids is the introduction into a case, by way of argument, of facts not in the record and calculated to prejudice the accused.' In *Patterson v. State,* 124 Ga. 408, 409 (52 SE 534), this court said: 'Flights of oratory and false logic do not call for mistrials or rebuke. It is the introduction of facts not in evidence that requires the application of such remedies.' In *Adkins v. Flagg,* 147 Ga. 135 (2a) (93 SE 92), it is held that 'what has transpired in a case from its inception to its

conclusion, and the conduct of the party or his counsel with respect to the case is the subject of legitimate comment.' In *Owens v. State,* 120 Ga. 209 (3) (47 SE 545), it is held: 'While counsel should not be permitted in argument to state facts which are not in evidence, it is permissible to draw deductions from the evidence; and the fact that the deductions may be illogical, unreasonable, or even absurd, is matter for reply by adverse counsel, and not for rebuke by the court.'"

11. In enumeration of error No. 9 appellant urges that the district attorney improperly argued to the jury the failure of the defendant to produce Bobby Lee Fears as a witness with the result that the jury was entitled to assume "the testimony of Tyrone Williams is that Bobby Fears and Alvin Vaughn are the two that got together." Appellant says this was prejudicial in that "the defendant is not under any circumstances required to produce any witness in his defense." We cannot agree with this argument. The argument was nothing more than proper legal pyrotechnics. As was stated in *Berry v. State,* 123 Ga. App. 616 (1) (182 SE2d 166), "[I]t is perfectly proper for the prosecuting attorney to comment on the fact that the defendant failed to adduce testimony in rebuttal of the State's evidence. See in this connection *Saffold v. State,* 11 Ga. App. 329 (4) (75 SE 338); *Ponder v. State,* 18 Ga. App. 727 (2) (90 SE 376); *Chavis v. State,* 55 Ga. App. 377, 341 (6 SE2d 196); *Howard v. State,* 86 Ga. App. 85, 87 (70 SE2d 870)."

12. Another contention of error dealing with the district attorney's presentation to the jury dealt with statements to which no objection was made, defendant contending that the arguments thus made were improper to the extent that the court should have stopped such arguments without objection from defense counsel. A reading of the transcript concerning these portions of the oral argument objected to by enumeration of error No. 11 does not support the contention.

13. An attack on the charge dealing with possession of heroin set forth as enumeration of error No. 12 is not meritorious. The complaint is made that the trial judge should have pointed out that our law does permit certain exceptions which are detailed in *Code Ann.* § 79A-809 and, therefore, that portion of the charge stating "It is unlawful for any person to possess or have under his control any narcotic drug, and that includes heroin" was contrary to law. The charge was proper.

14. Enumeration of error No. 7 is based upon the general ground that the verdict and judgment are contrary to the law and to the evidence. This allegation of error is based principally upon the contention that the testimony of the co-defendant Tyrone Williams was not sufficiently corroborated.

"Only slight evidence connecting defendant with the crime is required to corroborate the testimony of an accomplice, . . . and it is not essential that such corroborating evidence be in and of itself sufficient to sustain a verdict of guilty, nor is it essential that the accomplice be corroborated in every material particular." *Seay v. State,* 108 Ga. App. 724, 727 (134 SE2d 422); *Haire v. State,* 89 Ga. App. 629 (80 SE2d 497); and *Parker v. State,* 86 Ga. App. 497 (71 SE2d 765).

The extraneous facts were sufficient to corroborate the testimony of the accomplice and the proof of corpus delicti plus evidence connecting the defendant with the crime and tending to show his participation therein. *Whaley v. State,* 177 Ga. 757 (3) (171 SE 290); *Haire v. State,* 89 Ga. App. 629, supra. The presence of the heroin in the defendant's car is amply sufficient for this purpose.

15. Defendant's enumeration of error No. 10 dealt with the remark made by the district attorney during the sentencing portion of the trial under our bifurcated procedure. In this portion of his argument the district attorney said, "As I told you in my opening argument, this is the first heroin case in the county. We need some direction here

as to what needs to be done for the possessing of heroin." At that point objection was made by the defense counsel which was overruled and thereafter the district attorney continued his argument along the same lines enlarging upon this suggestion.

While there might be some question with reference to the additional remark requesting guidelines and the assertion that "we follow what the community wants" it is to be noted that the district attorney urged the maximum sentence and the jury declined to follow urgings in this respect.

As was stated in *Terhune v. State,* 117 Ga. App. 59 (5) (159 SE2d 291), "A solicitor general may argue to the jury the necessity for enforcement of the law and may impress upon the jury, with considerable latitude in imagery and illustration, its responsibility in this regard. See 23A CJS 202, Criminal Law, § 1107; 53 AmJur 371, Trial, § 465. And the solicitor may urge severe punishment of the accused. *Bailey v. State,* 153 Ga. 413 (4) (112 SE 453); *Smith v. State,* 74 Ga. App. 777, 791 (41 SE2d 541)."

As we find no error was committed the judgment is

*Affirmed. Eberhardt, P. J., and Deen J., concur.*

ARGUED MARCH 8, 1972—DECIDED APRIL 10, 1972—
REHEARING DENIED MAY 11, 1972—

*Gilbert & Carter, Fred A. Gilbert, Jack G. Handler,* for appellant.

*Thomas W. Ridgway, District Attorney, Charles T. Shean, III,* for appellee.

ON MOTION FOR REHEARING

Appellant has filed a lengthy detailed motion for rehearing in which each portion of the foregoing opinion is discussed except for that portion numbered 13. Appellant further argues that the cummulative effect of the alleged errors was a denial of a fair and impartial trial.

Recognizing that judges including those on the appellate bench are not infallible, this court has again carefully scrutinized the three transcripts which contain the entire pro-

ceedings and reconsidered each enumeration of error in the light of the contentions made as to these in the rehearing motion. This review has confirmed our opinion that defendant received all of his constitutional rights, including a fair trial, and there was no error.

*Rehearing denied.*